IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEE WIGOD, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALLFIRE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 1:19-cv-06953<br>Honorable Martha M. Pacold |

**COMBINED RESPONSE TO THE MOTIONS BY
<u>LORI WIGOD TO QUASH AND DELAY SUBPOENA</u>**

CallFire, Inc., by and through its counsel, respectfully submits this combined response memorandum in opposition to the motions by Lori Wigod to quash a subpoena directed to her [Dkt. 1] and to stay enforcement of the subpoena [Dkt. 5].[1]

I. **<u>PRELIMINARY STATEMENT.</u>**

Far from being misguided or unduly burdensome, the subpoena at issue here seeks records and testimony crucial to CallFire's defense of a pending putative Telephone Consumer Protection Act ("TCPA") class action now pending in California, where the movant's husband seeks to serve as class representative. *See Wigod v. CallFire, Inc.*, 2:19-cv-02874-SVW-MAA (C.D. Cal.) (Copy attached as Exhibit B to Mrs. Wigod's memorandum {Dkt. 1}, hereinafter, the "California Class Action"). The California Class Action has a trial date of December 10, 2019. Quashing or delaying the subpoena would be profoundly prejudicial to CallFire, depriving it of the facts necessary to its defense of the California Class Action. The motions filed by Lori Wigod, while

---

[1] By Order dated October 23, the Court set the matter for hearing at 9:30 AM on October 28, 2019. [Dkt. 8; Dkt. 9]

breathless in tone, omit crucial facts (such as looming deadlines in the California Class Action) and exaggerate others (such as the supposed burdens of responding). We respectfully request that the motions to quash or delay enforcement of the subpoena be denied.

## II. BRIEF BACKGROUND.

### A. The California Class Action.

On April 15, 2019, Lee Wigod (an Illinois resident and husband of the movant) filed a putative nationwide class action in the United States District Court for the Central District of California. *See Wigod v. CallFire,* Inc., 2:19-cv-02874-SVW-MAA (C.D. Cal.) (*See* Dkt. 1, Exhibit B.) That lawsuit alleges that CallFire is a "cloud telephony services provider" and that one or more of its clients used CallFire's telephony services to transmit multiple text messages to Wigod's cell phone. (Id., Par. 5.) Thus, unlike the usual TCPA case where the defendant initiated the text message, Mr. Wigod is seeking to impose liability on the entity that merely *carried* (rather than *initiated*) the text message.

The putative class[2] is *not* limited to persons who received texts from a specific CallFire client. Rather, the class supposedly includes *every* person who received a text from *any* subscribers to CallFire's telephony service and who continued to send messages after allegedly receiving a response directing the subscriber to "stop."

To state the obvious, as a mere service provider (much like, for example, AT&T), CallFire does not keep -- nor is it legally required to keep -- records of which persons provided what consents (or withdrawals of consents) to which CallFire subscriber. The subscriber -- not the carrier -- has the obligation to obtain consent. Only the message initiator has liability for any

---

[2] Mr. Wigod has yet to file a motion to certify a class. Nor has he noticed a single CallFire deposition. Only on October 22, 2019, did he subpoenaed two third parties.

TCPA violations that may occur.[3]  Without a record of consent, discovery here is crucial to proving or disproving issues of consent and withdrawals of consent.

### B. The Looming Deadlines in the California Class Action.

The motion to quash omits relevant deadlines in the California Class Action.[4]  Most notably, the parties in the California Class Action must file for summary judgment by midnight on October 28, 2019, which had been the noticed date of Ms. Wigod's deposition.[5]  In addition, the parties are scheduled to engage in Court-mandated mediation in this matter on October 30, 2019.

Plaintiff must file any motion for class certification by November 29, 2019, and trial is scheduled for December 10, 2019.

### C. The Subpoena.

Against that background, CallFire naturally sought discovery in the California Class Action about the conduct of Mr. Wigod and his wife, Mrs. Lori Wigod.  Mrs. Wigod is the actual and sole holder of the cell phone account at issue, as well as the sole lessor of all of the mobile cell phones associated with Mrs. Wigod's account.  As noted above, since CallFire does not and cannot maintain records on either consent or its withdrawal, it must determine *through discovery* what the plaintiff or his wife did or did not do in order to defend itself against the lawsuit brought by Mr. Wigod.

---

[3] CallFire cannot possibly monitor or be responsible for monitoring all client/customer text message communications.  CallFire has over 35,000 active customers and transmits tens of millions of text messages each month.  Consent, withdrawal of consent, and renewal of consent happen in myriad ways.  A baseball fan, for example, might consent in writing to receive communications about his or her favorite team while at Wrigley, electronically withdraw that consent upon the team's next loss the following day, and then once again renew that consent in writing the day after that following the team's next win.

[4] The dates are well known to Mrs. Wigod's counsel, who are in fact counsel in the Californian Class Action for *Mr.* Wigod.  For reasons known only to them, Woodrow & Peluso, LLC has appeared here as counsel for *Mrs.* Wigod, while Mr. Wigod is listed as having filed a pro se appearance.

[5] CallFire intends to pursue summary judgment on multiple grounds, only some of which may depend on Mrs. Wigod's testimony.  It planned to use crucial testimony from her given the benefit of live transcript.  Regardless of its timing for that brief, her testimony will likely be fundamental to other aspects of the case such as class certification.  It should not be indefinitely delayed.

CallFire in fact anticipates that Ms. Wigod's testimony and forensic collection of her mobile phones and computer-based Internet browsing history will demonstrate that one or both of the Wigods consented to the text messages received from CallFire subscribers.

Ms. Wigod was served on October 11, 2019, seeking to compel her appearance on Monday, October 28, 2019. This allowed her more than the 14-day minimum specified under Federal Rule of Civil Procedure Rule 45. For some reason, Mrs. Wigod delayed filing the motion to quash until October 22, and now cries "emergency."

### D. The Plaintiff Refused to Negotiate Any Limitations -- Except Delay

By no later than October 9, 2019, CallFire advised class counsel for Mr. Wigod (who is somehow now also serving as personal counsel for Mrs. Wigod) that CallFire wanted to depose Mrs. Wigod. Class counsel responded by stating:

> We are generally opposed to any deposition of Lori Wigod, as she does not possess any knowledge relevant to this case. If you are insistent on pursuing a deposition, we intend to file a motion to quash any subpoena to that effect. [Exhibit A.]

Class counsel made this response, of course, before even seeing the subpoena.

The subpoena was thereafter issued to Mrs. Wigod on October 11. (A copy of the subpoena is attached as Exhibit B.) After receiving the subpoena, counsel in the California Class action did not attempt to negotiate any meaningful imitations on the subpoena, waited 11 days and then filed the instant motion to quash or delay, claiming they faced an emergent discovery deadline.[6]

### III. ARGUMENT.

A TCPA case fundamentally concerns mobile telephone usage and mobile telephone records, as well as computer-based Internet usage, all of which are common means of providing

---

[6] Lee Wigod and his counsel have been equally dilatory in the California Class Action lawsuit, They have not issued a single deposition notice to CallFire. On October 22, 2019, they sent two non-party notices calling for testimony and documents. There is no day set for either.

- 4 -

and withdrawing consent to receive text messages. As noted above, because CallFire has no obligation to maintain records on either consent or its withdrawal. Thus, CallFire must determine *through discovery* what Mr. Wigod or Mrs. Wigod did or did not do with Mrs. Wigod's mobile telephone account and Mrs. Wigod's mobile telephones, as well as their computer-based Internet usage. Mr. Wigod brought his case against CallFire, and CallFire has a right to a forensic collection and imaging of relevant devices, including the mobile telephones leased by Mrs. Wigod and a forensically-sound understanding of their Internet usage. Without such a review, CallFire will not be able to fully defend itself against Mr. Wigod's false claims in the California Class Action.

The heart of the motion by Mrs. Wigod is that she supposedly has no relevant knowledge of the matters at issue in this action. The record here, however, disproves that, as recently produced documents show that Mrs. Wigod is both sole the account holder and the person who leases the phone. CallFire also wants to question Mrs. Wigod about her actions in possibly providing consent to be called on one or more of the phones. Among other matters, ownership of the account and the terms under which Mrs. Wigod provided the rental phone to her husband may affect her husband's Article III standing.[7] This in itself supports deposing her.

Ultimately, the motion to quash boils down to the assertion in the movant's brief that she lacks any relevant knowledge. It is hornbook law, however, that a "witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge." 8A Fed. Prac. & Proc. Civ. §

---

[7] Section 227 of the TCPA confers standing upon the "called party." Subparagraph (A) asks whether a "called party" consented to the call, and clause (iii) contains the phrase "for which the called party is charged." (Emphasis added.) The second use of "called party" clearly then refers to the current subscriber, because only the current subscriber pays. The presumption that a statute uses a single phrase consistently (*see Mohasco Corp. v. Silver*, 447 U.S. 807 (1980), implies that the standing vests in the current subscriber, *i.e.*, Mrs. Wigod and not her husband.

2037 (2013). Mrs. Wigod's rote and conclusory denials (through counsel) fail to show that she lacks knowledge of any facts that may be relevant to the claims in the California Class Action.

### A. The Subpoena Seeks Relevant Information.

The subpoena seeks information that is crucial to CallFire. While the subpoena speaks for itself, it essentially seeks three things: (a) cell phone records; (b) browser histories and (c) forensically correct copies of Mrs. Wigod's computers and phones (with such copies to be made at CallFire's expense by independent third party forensic experts).[8]

As noted above, *CallFire has no other means other than discovery* to determine if Mr. Wigod gave consent, let alone how or whether such consent was provided or withdrawn.

Given that constraint, CallFire is entitled to determine, for example, whether Mrs. Wigod (acting either independently or in concert with her husband) gave consent to one or more of CallFire's customers to call the phone she provided to her husband. Were her (or his) consent to receive messages established, it would support summary judgment for CallFire or denial of class certification.

Inter-spousal consent is all too common an issue in TCPA class actions and, in some instances, may even be a deliberate ploy to create a TCPA class where none would otherwise legitimately exist. For example, in *Rodriguez v. Premier Bankcard*, Case No. 3:16CV2541, 2018 U.S. Dist. LEXIS 149225 (N.D. Oh. Aug. 31, 2018), a husband provided a phone number to a finance company to contact him about his account. Although he owned the account, his wife (the putative class representative) claimed that she was actually the sole user of the phone. The wife sued the finance company in a nationwide TCPA class action contending that it had called her and unnamed class members without consent. The court ultimately concluded that the husband's

---

[8] The plaintiff and Mrs. Wigod will both receive their own, identical copies of the forensically accurate image.

consent precluded the wife's claim, regardless of whether she ever personally gave prior express consent.

Here, as in *Rodriguez*, CallFire is entitled to conduct discovery that goes to the heart of the consent issue. If, for example, it were demonstrated that Mrs. Wigod provided consent to one or more of the challenged calls (or renewed such consent after Mr. Wigod supposedly withdrew it), it would certainly create issues as the suitability of Mr. Wigod as class representative and could cut the core out of the class action, justifying summary judgment on his claim.

### B. There Is No Undue Burden.

Ms. Wigod is by no means the classic "non-party" confronted by an unexpected subpoena. She is the wife of the class plaintiff. More significantly, and as Mrs. Wigod admits in her motion to quash, it is she alone -- not her husband -- who owns the cell phone account at issue here.

The requests are not unduly burdensome. For example, four years' worth of phone records (a period consonant with the statute of limitations for TCPA cases) probably equals something on the order of 500 pieces of paper (*i.e.*, 48 months x 10 pages per month). Those records contain information on the text messages sent and received using Ms. Wigod's cell phone plan and the associated telephones that she leases. Producing copies of her browser history is a simple matter as well: Mrs. Wigod just hits the history button on her browser button and prints the results. The forensically accurate image of her computers or phone will be done entirely at CallFire's expense and can be done seamlessly by third party experts before or during her deposition. Both she and her husband will get copies and all information -- including any personal data -- will be subject to the Protective Order entered in the California Class Action.[9]

---

[9] To state the obvious, a forensic copy may reveal materials that might have been erased from the browser history, such as visits to particular websites that supposedly sent texts without permission.

Mrs. Wigod also complains that she may lose a day's pay. The same may be said, however, about almost any non-salaried witness. Moreover, she indicates she can make up that loss by working on a weekend. In a class action where her husband and his counsel are seeking millions of dollars in damages, her loss of a single weekend day can hardly be called unduly burdensome. Were the loss of a day in testifying enough to prove burden, virtually no witness would ever have to respond to any subpoena.

### C. There is No Room For Delay.

Finally, Mrs. Wigod suggests that the Court should delay the deposition for an indefinite period while the Court considers the motion to quash. [Dkt. 6] In this regard, we bring to the Court's attention the schedule established in the California Class Action by Judge Wilson. For example, the parties are scheduled to mediate this matter pursuant to the court's mandate on October 30. Mr. Wigod's motion for class certification in the California Class Action is due by November 29, and trial is set for December 10, 2019.

In short, deferring her deposition would potentially deny CallFire information crucial to seeking summary judgment, settling, opposing class certification, and defending itself at trial in this case. We thus ask the Court to deny the motion to quash promptly and avoid undue prejudice to CallFire.[10]

---

[10] CallFire believes it has already suffered prejudice. It noticed Mrs. Wigod's deposition for the morning of October 28, 2019, the same date on which its 12(b)(1) motion challenging Mr. Wigod's standing and its motion for summary judgment is due. CallFire planned on using live transcript to include relevant portions of her testimony on certain anticipated arguments. The motion to quash has effectively forestalled that opportunity.

IV.    **CONCLUSION.**

For the foregoing reasons, CallFire respectfully requests that the Court deny the motions to quash the subpoena issued to Lori Wigod or delay its enforcement.

Dated:  October 24, 2019                        Respectfully submitted,

                                                          By: *s/ William F. Dolan*

                                                          William F. Dolan
                                                          JONES DAY
                                                          77 West Wacker Drive, Suite 3500
                                                          Chicago, IL 60601
                                                          Telephone:  (312) 782-3939
                                                          Facsimile:  (312) 782-8585

## **NOTIFICATION AS TO AFFILIATES**

Pursuant to Local Rule 3.2, CallFire states that it has no publicly held affiliates.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Response Memorandum In Opposition to Motions to Quash or Delay Subpoena was caused to be served by ECF on this 24rd day of October, 2019 upon the attorneys listed below:

Marc E. McCallister
McCallister Law Group
120 N. LaSalle Street, Suite 2800
Chicago, IL 60602
mem@mccallisterlawgroup.com

Steven L. Woodrow
Patrick H. Peluso
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, CO 80210
swoodrow@woodrowpeluso.com
ppeluso@woodrowpeluso.com

                                               */s/ William F. Dolan*
                                               William F. Dolan